IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cr-00079-AN |
| v. | **OPINION AND ORDER** |
| GERSON FERNANDO MOLINA-ORANTES, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

At the continued initial appearance of Defendant Gerson Fernando Molina-Orantes ("Molina-Orantes"), the United States (the "Government") moved for a detention hearing on the ground that Molina-Orantes presents a serious risk of flight under 18 U.S.C. § 3142(f)(2). For the reasons discussed in more detail below, the Court found that the Government failed to meet its burden of demonstrating that Molina-Orantes presents a serious risk of flight and therefore denied the Government's request to hold a detention hearing.

## BACKGROUND

Molina-Orantes is a twenty-nine year old citizen of Guatemala who has been living in Beaverton, Oregon, for at least the past three years. His parents live in Guatemala, he has daily contact with a sibling living in Portland, Oregon, and several members of his extended family

PAGE 1 – OPINION AND ORDER

live in Oregon. He has worked full-time in the construction field, and reports no history of physical, mental health, or substance abuse issues. He has no criminal history.

On March 5, 2025, a federal grand jury returned an indictment charging Molina-Orantes with one count of illegal reentry in violation of 8 U.S.C. § 1326. (ECF No. 1.) At his initial appearance on April 17, 2025, the Government requested a detention hearing on the ground that Molina-Orantes presents a serious risk of flight under 18 U.S.C. § 3142(f)(2). (ECF No. 8.) At a continued hearing on April 23, 2025, the Government proffered facts in support of its position that Molina-Orantes presents a serious risk of flight, to which Molina-Orantes responded and objected to a detention hearing. The Court found that the Government has not met its burden of demonstrating by a preponderance of the evidence that Molina-Orantes presents a serious risk of flight, and therefore ordered Molina-Orantes' release.

## DISCUSSION

## I.    THE BAIL REFORM ACT

Section 3142(f) of the Bail Reform Act outlines the circumstances in which the Court "shall" hold a detention hearing:

> Detention Hearing. — The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> (1)    upon motion of the attorney for the Government, in a case that involves—
>
> (A)    a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (B)    an offense for which the maximum sentence is life imprisonment or death;

(C)     an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

(D)     any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(E)     any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or

(2)     upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—

(A)      a serious risk that such person will flee; or

(B)     a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Or. 2012)

("[P]ersons who are not citizens must be treated under the [Bail Reform Act] like all other persons charged with an offense, which is precisely what [the magistrate judge] did.").

It is now well settled in the Ninth Circuit that the Government may not seek a defendant's pretrial detention unless the (f)(1) or (f)(2) criteria are satisfied. *See United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) ("We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2)."); *United States v. Figueroa-*

*Alvarez*, 681 F. Supp. 3d 1131, 1135-36 (D. Idaho 2023) ("Absent one of these serious circumstances that would automatically trigger a detention hearing, a defendant must be released on personal recognizance, unsecured appearance bond, or conditions. This is true whether the defendant is otherwise dangerous." (first citing 18 U.S.C. § 3142(a); and then citing *Twine*, 344 F.3d at 987)); *United States v. Subil*, No. 2:23-cr-00030-TL, 2023 WL 3866709, at *2 (W.D. Wash. June 7, 2023) ("The Government must then demonstrate that the defendant is eligible for a detention hearing. A defendant is eligible for a hearing only if the Government shows, by a preponderance of the evidence, that the case falls into one of the categories listed in 18 U.S.C. § 3142(f).") (citations omitted); *United States v. Thomsen*, No. 3:10-cr-02810, 2010 WL 11500890, at *2 (S.D. Cal. July 14, 2010) ("Defendant is not charged with an offense listed in 18 U.S.C. § 3142(f)(1), nor has there been any evidence presented that he is a serious risk to obstruct justice or engage in any of the other nefarious conduct described in 18 U.S.C. § 3142(f)(2)(B). Accordingly, pursuant to *Twine*, dangerousness by itself is insufficient to justify Defendant's detention. As illogical and incongruous as this sounds, this is how the [Bail Reform Act] reads and what *Twine* has held.").[1]

---

[1] Secondary sources are in accord. *See, e.g.*, Jefri Wood, The Bail Reform Act of 1984 (Federal Judicial Center 4th ed. 2022) ("FJC Handbook") at 18 ("A pretrial detention hearing may *only* be held if there is sufficient information to show that section 3142(f)(1) or (f)(2) applies to the defendant. Whenever the government seeks pretrial detention, the court should verify that the case involves at least one of the specific circumstances listed in section 3142(f). If not, a detention hearing is not authorized by the statute and the court must release the defendant with appropriate conditions.") (simplified); *id.* at 20-21 ("'Danger to the community' or a general allegation of dangerousness, for example, which is a factor to be considered *during* a detention hearing, is *not* a factor under section 3142(f) that authorizes a detention hearing to be held in the first place. . . . The question whether the defendant poses a danger to the safety of the community under subsection 3142(e) cannot be considered unless the defendant is found to be eligible for detention under subsection 3142(f).'") (citation omitted); FED. PROC. L. ED. § 22:1905 ("Evidence of a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pretrial detention under the Bail Reform Act; it is also necessary

In other words, "detention hearings are authorized only if the defendant (i) is charged with one of five categories of serious crimes—crimes that, if the defendant were to recidivate while on pretrial release, pose the greatest risk to community safety; or (ii) presents a serious risk of flight, or a serious risk of obstruction or intimidation—acts that present the greatest risk to the integrity of the judicial process." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1135. "Absent one of these serious circumstances that would automatically trigger a detention hearing, a defendant must be released on personal recognizance . . . or conditions." *Id.* at 1135-36 (citing 18 U.S.C. § 3142(a)). "Section 3142(f), then, imposes on the magistrate [judge] a gatekeeping function at initial appearance."[2] *Id.* at 1136 (citing *Subil*, 2023 WL 3866709, at *4).

Where a defendant is not charged with an offense listed in 18 U.S.C. § 3142(f)(1)—as here—the Bail Reform Act requires the Government to present concrete information specific to the defendant to demonstrate that a case is eligible for a detention hearing under Section

---

to establish that the defendant's conduct involves one of the crimes enumerated in 18 U.S.C.[] § 3142(f).").

[2] As such, the Assistant U.S. Attorney should clearly indicate at the initial appearance if the Government is seeking a detention hearing under (f)(1) or (f)(2). The Court will then determine whether a detention hearing is authorized before holding a detention hearing. *See Subil*, 2023 WL 3866709, at *4 ("A recent study of federal pretrial detention identifies . . . a 'problematic feedback loop': '[T]he prosecutor requests pretrial detention for reasons not authorized by the law, the defense attorney does not object, and the judge neither questions the prosecutor nor adheres to the statutory requirements, sometimes jailing people unlawfully.'" (quoting Alison Siegler, Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis 29 (2022))); FJC Handbook at 18 n.78 (noting that "[g]eneral allegations of 'dangerousness' or risk of nonappearance . . . are not factors under section 3142(f) and therefore do not provide a basis for holding a detention hearing"); *id.* ("In one study of cases between late 2018 and early 2019, however, 'prosecutors routinely requested detention at the Initial Appearance on the impermissible basis of 'danger to the community' or 'risk of flight,' and judges regularly granted those requests.'") (citation omitted).

3142(f)(2).[3] *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1138 ("[T]he Government must present

'concrete information' not 'mere conclusory allegations.'") (citations omitted); *United States v.*

*Muñoz-Correa*, No. 2:23-cr-00302-CW, 2023 WL 5672203, at *3-4 (D. Utah Sept. 1, 2023)

("The United States fails to qualify for a detention hearing because this case does not involve a

serious risk that the defendant will flee. When assessing how serious this risk is, courts look to

several factors including: incentives to flee, ability to flee, ties to the jurisdiction of the United

States, and reliability and trustworthiness of the defendant. To establish these factors, the United

States 'must present concrete information not mere conclusory allegations.") (simplified); *see*

*also* FJC Handbook at 20 ("Under section 3142(f)(2)(A) the government must present evidence

that *this* defendant presents a *serious* risk to flee, to obstruct justice, or to 'threaten, injure, or

intimidate, or attempt to threaten, injure, or intimate, a prospective witness or juror.'").

     "The Government must demonstrate serious risk of flight by a preponderance of the

evidence to trigger a detention hearing under § 3142(f)(2)(A)." *Figueroa-Alvarez*, 681 F. Supp.

3d at 1138 (citations omitted); *see also Subil*, 2023 WL 3866709, at *4 (recognizing that the

court must find, "by preponderance of the evidence, that a § 3142(f) category is present");

*United States v. Erazo-Calix*, No. 1:24-cr-00150-AKB, 2024 WL 4505038, at *3 (D. Idaho Oct.

16, 2024) ("Ninth Circuit authority indicates *Figueroa-Alvarez* correctly identifies the

appropriate standard for determining a risk of flight as a preponderance of the evidence." (first

citing *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015); and then citing

---

[3] "[D]efense counsel must be vigilant in ensuring that these requirements are followed."
*Subil*, 2023 WL 3866709, at *4 (citation omitted); *id.* at *5 (finding that the defendant waived
his right to object to a detention hearing where he did not oppose the Government's motion at the
arraignment); *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441, at *6 (M.D. Tenn.
May 27, 2021) (explaining that when the defendant does not challenge the Government's right to
a detention hearing, the defendant has arguably waived or forfeited the right to object to a
hearing).

*United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985))) (footnote omitted). "More finely put, this means that the Government must demonstrate that it is more likely than not that there is a serious risk that the defendant will flee, not that it is more likely than not that the defendant will flee." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138 (citations omitted).

## II.    SERIOUS RISK OF FLIGHT

The indictment charges Molina-Orantes with one count of illegal reentry in violation of 8 U.S.C. § 1326. (ECF No. 1.) There is no dispute that this case does not involve one of the Section 3142(f)(1) enumerated offenses, and therefore (f)(1) does not authorize a detention hearing here. Accordingly, the Government is entitled to a detention hearing upon its request only if it can establish by a preponderance of the evidence that the defendant poses a serious risk of flight (or obstruction) under Section 3142(f)(2). *See United States v. Pavon-Andino*, No. CR 25-mj-00022-TPO, 2025 WL 446143, at *1-4 (D. Colo. Feb. 10, 2025) ("In the present case, the parties agreed that the only federal offense charged is one under 8 U.S.C. § 1326, illegal re-entry following a prior removal. The parties also agreed that the case must involve a serious risk of flight for a Detention Hearing to be conducted. By the plain language of the statute, this Court cannot conduct a Detention Hearing (or, by extension, grant the government's request for a continuance to conduct a Detention Hearing) unless there is sufficient evidence that the defendant poses a serious risk of flight.").

District courts have consistently found that a defendant's risk of "flight" means something different than his risk of "nonappearance." Chief Magistrate Judge Raymond Patricco's thorough statutory analysis in *Figueroa-Alvarez* provides helpful guidance here. In *Figueroa-Alvarez*, Chief Judge Patricco examined an earlier district court opinion in *White*. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1137-38. In *White*, the district court found that it "is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor

are they merely different degrees of the same type of risk." 2021 WL 2155441, at *10 (quoting Lauryn P. Gouldin, Defining Flight Risk, 85 U. Chi. L. Rev. 677, 683 (2018)). Rather, "[i]n the context of measuring and managing risks, many defendants who merely fail to appear differ in important ways from their fugitive cousins." *Id.* (citing Gouldin at 683). The *White* court further recognized that "[i]t well may be that someone can pose a risk of 'non-appearance' without posing a risk of 'flight.'" 2021 WL 2155441, at *8. "The latter term seems to connote intentional and active movement to put oneself beyond the supervision of the court and the reach of criminal proceedings; this connotation is not inherent in the notion of 'non-appearance,' a term broad enough to cover negligent or other unintentional, and not just active and intentional, failures to appear." *Id.* "It would seem that 'risk of flight' is a subset of 'risk of non-appearance'—meaning that, depending on the circumstances suggesting a serious risk of non-appearance, a risk of non-appearance may not entail a risk of flight." *Id.*; *see also United States v. Runsdorf*, No. 9:22-08015-WM, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) ("And, the question whether there is a serious risk that the defendant will 'flee' is also distinct from the later inquiry whether conditions of release will reasonably assure the defendant's 'appearance' as required."); *United States v. Gibson*, 384 F. Supp. 3d 955, 965 (N.D. Ind. 2019) ("While Congress chose to use 'serious risk of flight' in subsection (f)(2)(A) to describe th[e] limited scenario under which a defendant will face a detention hearing, Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). The court "agree[d] with this reasoning" and held that "risk of flight is distinguishable from, and more narrow than, risk of non-appearance." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1137.

The court then turned to the meaning of "serious risk of flight." *See id.* (noting that "[b]ecause courts interpreting the Act have conflated risk of flight with risk of non-appearance,

risk of flight has evaded definition" (citing *White*, 2021 WL 2155441, at *10)). After comparing different interpretations, the court "agree[d] that flight—as that term is commonly understood— involves active movement" "[b]ut flight is not limited to movement outside of the jurisdiction; it can also involve secreting oneself within the jurisdiction by moving to a different locale therein." *Id.* (first citing Nolan, Joseph R. & Nolan-Haley, Jacqueline M., Black's Law Dictionary, at 639-40 (6th ed. 1990) ("Black's Law Dictionary") (defining "flight from prosecution" as "[t]he evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention, or the institution or continuation of criminal proceedings, regardless of whether one leaves [the] jurisdiction"); and then citing *White*, 2021 WL 2155441, at *10 (acknowledging that a defendant can "actually or at least metaphorically [be] 'on the run' [ ] within the jurisdiction")). "Moreover, flight must be intentional, and not the result of mere negligence or mistake." *Id.* (first citing *White*, 2021 WL 2155441, at *8; and then citing *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 588-89 (E.D. Ky. 2023)). "Finally, the risk of flight referenced in the Act is a 'serious' risk of flight." *Id.* at 1138 ("'Serious' has a plain meaning." (citing, *inter alia*, Black's Law Dictionary at 1367 (defining "serious" as "important, weighty, momentous, grave, great"))).

"Taken together, then, a 'serious risk of flight' under § 3142(f)(2)(A) is a great risk— beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Id.* The Court adopts this well-reasoned interpretation of "serious risk of flight."

## III.    SERIOUS RISK OF FLIGHT IN ILLEGAL REENTRY CASES

The Ninth Circuit has not specifically addressed the meaning of "serious risk of flight" in the illegal reentry context, but it "has provided a non-exhaustive list of primary factors that courts should consider in determining whether a defendant charged with violating § 1326 presents a risk of non-appearance under § 3142(g)[.]" *Id.* at 1139. Those "[p]rimary factors

include [the defendant's] violation of the terms of his supervised release, his multiple unlawful entries into the United States, his prior failure to appear when required in state court, his use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against him." *Id.* (quoting *Santos-Flores*, 794 F.3d at 1092). "The Ninth Circuit also observed that '[a]lienage may be taken into account, but it is not dispositive.'" *Id.* at 1139 n.6 (quoting *Santos-Flores*, 794 F.3d at 1090).

As Chief Judge Patricco noted, "these factors also inform whether a defendant charged with violating § 1326 presents a serious of risk of flight under § 3142(f)(2)(A)" but "because risk of non-appearance and risk of flight are slightly different concepts, . . . applying the *Santos-Flores* factors to risk of flight is more nuanced and deserves additional examination." *Id.* (citing *Cobix-Espinoza*, 655 F. Supp. 3d at 589 ("The difference between the general risk of nonappearance and the serious risk of flight, in some contexts, is stark. Certainly, the immigration context is one.")).

The court then analyzed the *Santos-Flores* factors relevant to a "serious risk of flight by an [undocumented] defendant[,]" organizing these factors into four categories: "(i) incentives to flee; (ii) ability to flee; (iii) ties to the jurisdiction and the United States; and (iv) reliability and trustworthiness of the defendant." *Id.* (citing Gouldin, 85 U. Chi. L. Rev. at 703-04); *see also Pavon-Andino*, 2025 WL 446143, at *2 ("Regarding the serious risk of flight specifically concerning a defendant who is not a lawful resident of the United States, additional factors can be considered: a) Incentives to flee, b) Ability to flee, c) Ties to the jurisdiction and the United States, and d) Reliability and trustworthiness of the defendant." (citing *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140)). The court noted that it must consider the factors as part of the "totality of the

evidence" and "[n]o one factor is dispositive." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140 (quoting *Santos-Flores*, 794 F.3d at 1092).

Importantly, the Ninth Circuit has instructed that courts shall "*not* consider the prospect of the [undocumented] defendant's immigration detention or involuntary deportation if released from criminal custody." *Id.* (first citing *Santos-Flores*, 794 F.3d at 1092 ("We conclude that the district court erred in relying on the existence of an ICE detainer and the probability of [defendant]'s immigration detention and removal from the United States to find that no condition or combination of conditions will reasonably assure [defendant]'s appearance pursuant to 18 U.S.C. § 3142(e)."); and then citing *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (holding that "the 'individualized evaluation' required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody")).

The Court incorporates Chief Judge Patricco's discussion of the four categories of relevant factors here. *See also Pavon-Andino*, 2025 WL 446143, at *2 ("[S]ome of the non-exclusive primary factors for the Court to consider as it relates to a defendant's risk of flight in an immigration related case are: 1) Prior violation of the terms of his supervised release, 2) Multiple unlawful entries into the United States, 3) Prior failure to appear when required in state court, 4) Use and possession of fraudulent identity documents, and 5) The severity of the potential punishment and the weight of the evidence against him." (citing *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139)).

### A.    Incentives to Flee

"Broadly speaking, a defendant has an incentive to flee if he or she is facing a lengthy prison term and is likely to be convicted." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141 (citing *Santos-Flores*, 794 F.3d at 1092). "Consideration of the weight of the evidence against the

defendant, as well as the range for imprisonment under the United States Sentencing Guidelines informs this analysis." *Id.*

### 1.    Weight of the Evidence

"Under the Act, the weight of the evidence is the least persuasive factor." *Id.* (citing *Motamedi*, 767 F.2d at 1408). "That is because any consideration of the weight of the evidence must acknowledge the defendant's pretrial presumption of innocence." *Id.* (citing *Motamedi*, 767 F.2d at 1408). "Notwithstanding the presumption of innocence, if the weight of the evidence against the [undocumented] defendant is objectively strong, the defendant may perceive a likelihood of conviction, giving him or her a greater incentive to flee." *Id.*

"Typically, in a § 1326 criminal prosecution, the weight of the evidence depends upon the integrity of the prior removal proceedings, the state of documentation within the defendant's Alien-File or 'A-File,' and the proof of identity of the defendant" and "this requirement makes § 1326 criminal prosecutions difficult to defend at trial." *Id.* "Accordingly, the weight of the evidence in most § 1326 prosecutions is strong." *Id.*

### 2.    Potential Punishment

To evaluate potential punishment, courts may consider the defendant's anticipated sentence if convicted. *See id.* (citing *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990)). "Under the Sentencing Guidelines, the extent of an [undocumented] defendant's potential punishment for violating § 1326 hinges primarily upon his or her prior criminal history." *Id.* (citing United States Sentencing Commission, Guidelines Manual, § 2L1.2 (Nov. 2021)). "The base offense level for violating § 1326 is eight, one of the lowest base offense levels in the Guidelines." *Id.* (citing § 2L1.2(a)). "As such, [undocumented] defendants without significant criminal histories often face a Guidelines range of imprisonment of between 0 to 6 months in prison, providing little incentive to flee standing alone." *Id.*

### B.    Ability to Flee

"An incentive to flee is distinguished from ability to flee." *Id.* at 1142. "Ability to flee involves the [undocumented] defendant's access to resources that would enable flight[,]" including "finances that could fund flight, access to fraudulent identity documents that could facilitate clandestine travel, and ties to persons outside of the jurisdiction who could assist flight." *Id.* (first citing *Santos-Flores*, 794 F.3d at 1092; and then citing 18 U.S.C. § 3142(g)(3)(A)).

"An [undocumented] defendant who has access to significant sums of money – from either his or her own bank accounts, or those of immediate family members, or cash – has a greater ability to flee." *Id.* (citing *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990)). "Also, an [undocumented] defendant's prior possession or use of fraudulent identity documents demonstrates his or her potential access to the same, should he or she prospectively decide to flee" because "[s]uch documents allow a defendant – otherwise subject to court and law enforcement supervision under his or her real name – to flee undetected." *Id.* (citing *United States v. Miranda*, No. 3:20-cr-00452-EMC-1(EJD), 2021 WL 493404, at *3 (N.D. Cal. Feb. 10, 2021)). "And, of course, close friends or family in another jurisdiction or foreign country can facilitate flight by providing transportation and temporary or permanent housing there." *Id.* Further, "[f]requent and recent foreign travel provides concrete evidence of ability to flee." *Id.*

### C.    Ties to the Jurisdiction and the United States

"Arguably most significant in the 'serious risk of flight' calculus – as distinguished from the 'risk of non-appearance' calculus – is consideration of the [undocumented] defendant's ties to the jurisdiction and the United States relative to his or her foreign ties." *Id.* "This fact-specific inquiry involves multiple factors: (i) length of residence in the jurisdiction and the United States; (ii) presence of family members in the jurisdiction and the United States; (iii) community ties to

PAGE 13 – OPINION AND ORDER

the jurisdiction and the United States; and (iv) ability to legitimately be employed and earn income in the United States." *Id.* (first citing *Townsend*, 897 F.2d at 995 ("When assessing an [undocumented] defendant's ties to the United States, factors to be considered include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens."); and then citing 18 U.S.C. § 3142(g)(3)(A) (noting relevant factors, including "family ties, employment . . . length of residence in the community, [and] community ties")).

### 1.      Length of Residence

"The length of residence in the jurisdiction and the United States, both uninterrupted and cumulative, bears significantly on serious risk of flight." *Id.* at 1142-43. "[Undocumented] defendants who have resided in the United States for many years are less likely to flee pending trial." *Id.* at 1143 ("This is especially true for [undocumented] defendants whose length of residence in the United States approaches or exceeds their length of residence in their home country. The longer an [undocumented] resides in the United States relative to the length of residence in their home country, the more that [undocumented] assimilates to American culture and becomes more removed from the culture of their home country. This makes it more likely the [undocumented] defendant will not flee in the face of § 1326 charges."); *cf. United States v. Mejias-Mejias*, No. 1:25-mj-00611, 2025 WL 846435, at *3 (D. Md. Mar. 18, 2025) ("The Court is unaware of authority suggesting that a brief residency, with less established ties to the community, is dispositive. Therefore, this must be weighed in the context of other considerations." (citing *White*, 2021 WL 2155441, at *12)); *id.* at *4 ("No information available to the Court suggests the defendant has means to flee. . . . Other than the basic fact that the defendant is alleged to be a foreign national, and thus likely has connections to his country of

birth, no evidence or proffer demonstrates an ability to flee." (first citing *Pavon-Andino*, 2025 WL 446143, at *3; and then citing *White*, 2021 WL 2155441, at *14)); *White*, 2021 WL 2155441, at *14 ("The fact that Defendant lacks community ties specifically in this district may be probative of his risk of unintentional non-appearance in this district, but it is not very probative of whether he would intentionally not show up here and instead choose the path of a fugitive.").

### 2. Family Ties

"The presence of close family members in the jurisdiction and the United States, relative to close family members who reside abroad, militates against serious risk of flight." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1143. "While there is no threshold number or exact formula, where the balance of an [undocumented] defendant's immediate family – parents, siblings, spouse, and children – reside in the jurisdiction and the United States, and the defendant maintains a close relationship with them, that [undocumented] defendant is less likely to flee than another [undocumented] defendant who lacks such familial anchors here." *Id.* "The presence of immediate family members who are United States citizens – especially children – is particularly compelling." *Id.* "Conversely, where the balance of an [undocumented] defendant's immediate family resides in their home country – and perhaps the [undocumented] defendant came to the United States simply to avail himself or herself of economic opportunity to support his or her family abroad – flight is more likely." *Id.*

### 3. Community Ties

"Like family ties, community ties are predictive of serious risk of flight." *Id.* "An [undocumented] defendant with a strong and well-defined network of friends, neighbors, co-workers, and parishioners in the jurisdiction and the United States presents a lesser risk of flight than an [undocumented] defendant without such a network." *Id.* ("Like immediate family, these

persons, and the community institutions they represent (employer, neighborhood, church, synagogue, or mosque, etc.), are anchors to the jurisdiction and the United States. They can provide the [undocumented] defendant with the needed moral, emotional, religious, and financial support that allow him or her to remain here through trial."). "Likewise, an [undocumented] defendant's ownership of property or business interests in the community further attaches him to the jurisdiction." *Id.* ("The [undocumented] defendant stands to lose these tangible items of value if he or she flees, thus discouraging flight.").

### 4.    Employment and Income

"Typically, a defendant's employment in the jurisdiction supports an argument that he or she will not flee." *Id.* (citing 18 U.S.C. § 3142(g)(3)(A)). "However, [undocumented] defendants cannot lawfully be employed and earn income in the United States." *Id.* (first citing 8 U.S.C. § 1324a; and then citing 8 C.F.R. § 274a.10(b)(1)). "For [undocumented] defendants, this cuts both ways." *Id.* "On the one hand, the [undocumented] defendant might seek to flee if released because he or she no longer has a source of legitimate income" and "supervision by court, law enforcement, and immigration authorities frustrates illegitimate employment and income." *Id.* "For many, this removes the primary incentive to remain in the United States: economic opportunity." *Id.* "On the other hand, absent employment and income, the [undocumented] defendant might not have the means to flee." *Id.* at 1143-44 ("Flight, either within the jurisdiction or not, requires funds: an [undocumented] defendant must travel to the new locale, find temporary or permanent housing there, and pay for the necessities of life. If flight is within the jurisdiction or the United States, he or she must do so surreptitiously to avoid arrest. This forecloses public assistance. For these [undocumented] defendants, flight may not be practicable.") (citation omitted).

"In many cases, whether an [undocumented] defendant can afford to stay in the United States if released pending trial depends on the availability of financial support from other legitimate sources – personal savings or from family, friends, or charity – measured against the length of the term of pretrial release." *Id.* at 1144. "On balance, then, the absence of prospective employment and income may be probative of serious risk of flight, unless the [undocumented] defendant demonstrates other means of legitimate financial support through trial or other disposition of the charge." *Id.*

### D.    Reliability and Trustworthiness of the Defendant

"[P]rior instances of disregarding or violating court orders may be predictive of flight insofar as they demonstrate that the defendant is not reliable or trustworthy." *Id.* ("Critically, however, the predictive value of prior violations of court orders depends on the type of order violated and the context of the violation."). An individual's illegal reentry into the United States after removal is one example of a failure to respect the law or court order. *See id.* ("[M]ultiple illegal reentries plainly are predictive of non-appearance. However, they are less predictive of flight. That is because illegal reentries simultaneously demonstrate the [undocumented] defendant's disregard for court orders and the criminal law and his or her strong desire to remain in the United States. Indeed, the very act of illegally reentering the United States – knowing that reentry subjects the [undocumented] defendant to a potential prison term and certain deportation thereafter – demonstrates a firm resolve to reside in this country, especially when done multiple times. As such, the Court construes multiple illegal reentries, standing alone, only as modest proof of serious risk of flight.").

"A defendant's prior violation of terms of supervised release, probation or parole indicates his or her disregard for court orders" and are also predictive of flight, but "such violations must be evaluated contextually" and "[t]he type of violation matters." *Id.* at 1145

("Violations that are the result of premeditated, conscious choices to avoid supervision and contact with supervising authorities are most predictive of flight. Violations that can be explained by negligence or untreated addiction to controlled substances are less so. For instance, multiple unexplained failures to appear for drug testing or for substance abuse counseling, tampering with a drug test, or unexplained and routine failures to report to a probation officer are predictive of flight. Such violations involve intentional choices to avoid accountability; a defendant who makes these choices may also choose to flee. Conversely, isolated and explained failures to appear for testing or treatment or to report to a probation officer, and positive drug tests prior to treatment or counseling, are less predictive of flight. Such violations involve mistakes or impaired judgment; a defendant who makes such mistakes or exhibits poor judgment is less likely to actively flee.").

Further, "[p]rior failures to appear are strongly predictive of flight" because "[g]enerally, they indicate a defendant's disregard for court orders."[4] *Id.* ("Specifically, they indicate a defendant's disregard for a court order to appear for court proceedings at a designated time and place, typically given with significant advance notice. Due to the advance notice, failures to

---

[4] Although not relevant here, substance abuse is another factor that courts consider. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1145 ("Finally, substance abuse is a reliability and trustworthiness category unto itself. Defendants who abuse alcohol or controlled substances often have impaired judgment and impeded facilities when they are using. Moreover, their illegal use of controlled substances demonstrates their general disregard for the criminal law. Such defendants, then, are less reliable and trustworthy, and accordingly, are less likely to appear for court. But it does not follow that they are considerably more likely to flee. Flight requires a coherent and well-funded plan: upfront finances, transportation to the new locale, housing at the new locale, a new source of income, and perhaps a new identity. Defendants who abuse substances often do not have access to these resources. Indeed, many spend large portions of their disposable income on the substances they abuse, leaving little to fund flight. Moreover, they may be unwilling to leave the locale of their source of supply only to have to find a new one. Some rely on public assistance that would effectively preclude flight. Accordingly, the Court views substance abuse as only marginally predictive of flight." (citing 18 U.S.C. § 3142(g)(3)(A))).

appear most often are intentional. This is especially true if a defendant has more than one in his

or her past, or no legitimate excuse was proffered contemporaneous with the failure to appear.

Hence, where a defendant has one or more unexplained prior failures to appear, a court may

extrapolate that he or she may make a similar, intentional choice to flee to avoid prosecution.").

## IV.    ANALYSIS

At Molina-Orantes' initial and continued appearances, the Government proffered facts in

support of its request for a detention hearing, including that (1) Molina-Orantes is a citizen of

Guatemala and is living in the United States without lawful status; (2) Molina-Orantes was

working as a driver for his cousin, who was recently arrested for money laundering; and (3) the

Government located false identification documents bearing Molina-Orantes' photograph on the

cousin's telephone. Based upon the record before the Court, the Government has not

demonstrated by a preponderance of the evidence that Molina-Orantes poses a serious risk of

flight.

### A.    Incentives to flee

The Government has not presented any evidence that Molina-Orantes has an incentive to

flee.[5] Even if the weight of evidence of illegal reentry is strong, Molina-Orantes has no criminal

history and therefore he is likely facing a guidelines range of 0 to 6 months in prison. *See id.* at

1146 (finding that "there is scant evidence that Defendant has an incentive to flee" where the

defendant was charged with illegal reentry but "Defendant falls within criminal history category

I" and therefore "he would face a guidelines range of 0 to 6 months in prison" and "[s]uch an

insignificant potential sentence provides Defendant with little incentive to flee the jurisdiction to

---

[5] At the continued appearance, the Government proffered that Molina-Orantes may be called to testify as a witness against his cousin charged with money laundering, but the Court disagrees that such speculation creates any meaningful incentive to flee.

avoid the instant prosecution"); *see also Pavon-Andino*, 2025 WL 446143, at *3 ("[T]he weight of the evidence appears to be strong. He was found inside of the United States and 'according to checks of various immigration and criminal databases, [the defendant] has not applied for, nor does he have any permissions to enter or remain in the United States.'[] However, the potential punishment he faces is minimal and is consistent with the punishment associated with a misdemeanor offense. As estimated by the Court . . . the likely guideline range for the defendant's re-entry offense is between 8-12 months of imprisonment . . . . This factor weighs heavily in favor of release."); *id.* ("[T]here is nothing specific to justify the defendant's incentive to flee in the present case. His ties to the community, including family members and employment, as well as the significant bond posted by his family in the pending [state] matter, demonstrate multiple incentives to stay. The pretrial services report notes no substance abuse, mental health, or physical health issues that may increase the risk of flight. Any idea that immigrant defendants are more likely to flee than non-immigrant defendants is simply not supported by any concrete data. In fact, empirical evidence suggests exactly the opposite: according to a March 2022 United States Department of Justice Special Report, '[undocumented] defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than [citizen] defendants. . . . This factor weighs in favor of release." (citing *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140)); [6] *United States v. Romero-Martinez*, No. 3:23-cr-00176

---

[6] In *Figueroa-Alvarez*, Chief Judge Patricco addressed the "common misconception" that "[undocumented] defendants granted pretrial release are more likely to fail to appear or flee than defendants who are United States citizens or lawful residents." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139. "[Undocumented] defendants who illegally enter this country, or illegally re-enter this country after removal, do so for many reasons: to flee political persecution in their home country, to flee drug-related violence in their home country, to pursue greater economic opportunity in this country, and to follow friends or family members who already live in this country, just to name a few." *Id.* at 1139-40. "But they share a common trait: they voluntarily chose to come to this country and stay here. Presuming that they are any more likely than

(JAM), 2024 WL 965150, at *6 (D. Conn. Mar. 6, 2024) ("Nor can I presume that simply because of his status as an undocumented non-citizen [the defendant] is more likely to flee than other defendants who face criminal charges. There is a 'common misconception' that '[undocumented] defendants granted pretrial release are more likely to fail to appear or flee than defendants who are United States citizens or lawful residents.'" (quoting *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139)); *cf. Mejias-Mejias*, 2025 WL 846435, at *3 ("There is no dispute that he is charged with a federal misdemeanor that carries a maximum incarceration of six months. On those terms, the charges are hardly an incentive to flee.") (citations omitted).

In light of the fact that he is not facing a custodial sentence in this case, the Court finds that Molina-Orantes does not have an incentive to flee the jurisdiction.

### B.    Ability to flee

The Government presented no evidence of Molina-Orantes' ability to flee. Specifically, the Government proffered no evidence that Molina-Orantes currently has access to any significant financial or other resources that would enable his flight. *See Pavon-Andino*, 2025 WL 446143, at *3 ("[T]he government has provided the Court with no evidence that the defendant has access to a large amount of money to travel, fraudulent travel documents, or specific ties to individuals outside of the country that could facilitate international travel. Other than his general ties to Honduras and the family members that live there, there is no evidence to support the defendant's specific ability to flee. His return to the United States, even after a prior deportation, would support the defendant's desire to stay in the county, not to flee. As a result, this factor is

---

[citizen] defendants to leave this country or the jurisdiction to avoid prosecution – just because they came here from another country – is misplaced." *Id.* at 1140. "Critically, this presumption is not supported by empirical proof." *Id.* (citing a March 2022 United States Department of Justice, Bureau of Justice Statistics, Special Report, reflecting that [undocumented] defendants granted pretrial release were less likely to fail to appear or violate conditions of release than [citizen] defendants).

neutral."); *Romero-Martinez*, 2024 WL 965150, at *6 ("This is also not a case involving a defendant of demonstrated financial resources who could feasibly relocate and effectively cover his tracks in doing so. If [the defendant] weighs the costs and benefits, he will know that flight would likely lead to eventual apprehension when he inevitably tried to reunite with his family again in Connecticut, and the various consequences would be even more severe."); *Figueroa-Alvarez*, 681 F. Supp. 3d at 1146-48 (holding that "proof of Defendant's ability to flee is wholly lacking" where the defendant had only $4,500 in savings, no ability to work and no access to or prior possession of fraudulent identity documents, and no evidence of recent travel outside the United States despite the fact that the defendant's parents and siblings resided in Mexico). Further, the Government presented no evidence of Molina-Orantes' recent travel outside the United States.

Although the Government did find evidence of false identification documents for Molina-Orantes on his cousin's phone, that phone is now in the Government's possession and the cousin is in custody. Notably, the Government did not present any evidence that Molina-Orantes possessed or used false identification documents or that he presented false identification documents at the time of his arrest. *See Pavon-Andino*, 2025 WL 446143, at *3 ("[T]he government presented no information about the defendant's use of fraudulent identification documents nor is any information contained in the Complaint about it[.] . . . As a result, this factor is neutral."). On the contrary, Molina-Orantes proffered evidence that he provided the arresting officer with a true copy of his Oregon identification card.

For these reasons, the Court finds that Molina-Orantes does not have the financial or other resources to flee the jurisdiction.

///

### C.    Ties to the jurisdiction and the United States

Molina-Orantes has ties to both the District of Oregon (a sibling and extended family members) and Guatemala (his parents). He has lived in Oregon for approximately three years. The Court concludes that this factor is neutral. *See Pavon-Andino*, 2025 WL 446143, at *4 ("Ties to the jurisdiction – the Court finds this factor to be neutral or weigh slightly in favor of detention. Clearly, the defendant has family ties outside of the United States in his native country of Honduras. However, for the last three years, and some unknown amount of time before that, the defendant has resided in the District of Colorado. . . . While he has some family here, the majority of his family remains in Honduras."); *cf. Figueroa-Alvarez*, 681 F. Supp. 3d at 1146 (finding that the defendant had "significant ties" to the district and the United States where he had resided in Eastern Idaho for sixteen years interrupted only by his four removals, which demonstrated his resolve to stay in the United States); *see also id.* at 1148 ("The Government appropriately argues that Defendant prospectively may not legally be employed or earn income in the United States. But again, this cuts both ways. It may provide him an incentive to flee because economic opportunity could be the primary reason he resides here. Or it may effectively preclude his flight because he lacks the means to flee, holding only $4,500 in liquid funds. This tension remains unresolved.").

### D.    Reliability and trustworthiness of the defendant

The Government speculates that Molina-Orantes was involved in his cousin's money laundering business, but presents no evidence of his involvement in or knowledge of its illegality, and the Government has not charged Molina-Orantes with any criminal offense other than illegal reentry. *Cf. Romero-Martinez*, 2024 WL 965150, at *5 ("[The defendant's] use of a false name is only marginally probative of a serious risk of flight."). Further, Molina-Orantes has no criminal history.

Further, without any prior criminal history, the Government cannot point to any prior failures to appear or supervision failures. *See Mejias-Mejias*, 2025 WL 846435, at *3 ("Absent are indicia of prior noncompliance or avoidance of criminal proceedings or judicial supervision. Such information often establishes a serious risk of flight. But the defendant has no other pending criminal charges and no prior failures to appear when ordered by a court. His only apparent interaction with a court or criminal charges appears to be this case. Nor is there any indicia of fraud or misappropriation of other identities, a fact that might indicate a slipperiness relevant to a flight risk.") (citations omitted); *Figueroa-Alvarez*, 681 F. Supp. 3d at 1148 (finding the defendant "generally reliable and trustworthy" despite that "four illegal reentries after removals demonstrate his disrespect for the law" where "[m]ore probative of serious risk of flight is the absence of any failures to appear or other pretrial or post-trial violations in his criminal history").

The only evidence calling Molina-Orantes' reliability into question is the current charge of illegal reentry, but that charge also demonstrates his ties to the District of Oregon. *See Pavon-Andino*, 2025 WL 446143, at *2 ("[T]his Court found, and the government did not dispute, that the defendant's charge itself, combined with his pending deportation hold, does not equate to a serious risk of flight. . . . [I]n the present case, the charge and accompanying deportation hold are not indicative of a risk of flight at all."); *Romero-Martinez*, 2024 WL 965150, at *4 ("First and primarily, the government contends that a risk of flight may be inferred from the fact that [the defendant] has a long history of disobeying the law by means of entering and re-entering the United States unlawfully. But because [the defendant]'s family ties in Connecticut are very strong, this argument sharply cuts the other way as well. It tends to show that [the defendant]'s commitment to be with his family in Connecticut—rather than to hide out in Honduras or

elsewhere—is so compelling that he will break the law and risk his freedom to do so."); *id.* ("The relevant inquiry at this point is [the defendant]'s risk of flight, not his general propensity to break the law. Although these inquiries overlap to some degree, if the facts of a case suggest that a defendant's primary motive for breaking the law is to enter and remain in the jurisdiction where he is subject to prosecution, these facts make the connection between general law breaking and risk of flight more tenuous."); *Figueroa-Alvarez*, 681 F. Supp. 3d at 1144 ("Indeed, the very act of illegally reentering the United States—knowing that reentry subjects the [undocumented] defendant to a potential prison term and certain deportation thereafter—demonstrates a firm resolve to reside in this country, especially when done multiple times."); *see also Muñoz-Correa*, 2023 WL 5672203, at *3 n.23 (noting that although the defendant "has shown disrespect for the United States' immigration laws by ignoring his removal order . . . and quickly returning despite being fully aware that he was not eligible to even apply to return to the United States for at least 10 years," this fact "does not cut in the United States' favor because [the defendant's] clear disrespect for the United States' immigration law manifested itself in him returning to the United States and staying for over [twelve] years"); *id.* at *3 ("Although [the defendant] was removed from the United States in 2011, he immediately returned to the same mobile home in West Jordan, Utah that he lived in with his family prior to his removal. Whatever foreign contacts had in his native country, they were not enough to keep him there for any material length of time. And when he immediately returned to the United States post-removal, he did not seek to go somewhere other than his home in West Jordan. He went right back to the home in Utah where immigration authorities found him in the first place, and he has remained there or nearby for [twelve] years.").

///

PAGE 25 – OPINION AND ORDER

Considering and weighing the totality of these circumstances, the majority of the relevant factors support a conclusion that Molina-Orantes does not present a serious risk of flight:

- Molina-Orantes lacks any meaningful incentive to flee because he is facing a non-custodial sentence;

- Molina-Orantes lacks any meaningful ability to flee;

- Molina-Orantes has family ties to both the District of Oregon and Guatemala, but no record of any recent international travel;

- Molina-Orantes has no criminal history, failures to appear, or supervision failures;

- Although the Government proffered evidence that his cousin possessed false identification documents for Molina-Orantes, it has not presented any evidence that Molina-Orantes possessed or used the documents, nor charged him with any such criminal offenses;

- Molina-Orantes has no reported mental health, physical health, or substance abuse issues; and

- Molina-Orantes has been cooperative with law enforcement at every contact.

Considering all of these factors, the Court concludes that there is not a "great risk—beyond average" that Molina-Orantes "will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Figueroa*-Alvarez, 681 F. Supp. 3d at 1138.

Accordingly, the Court concludes that the Government has not met its burden of proving by a preponderance of evidence that Molina-Orantes is a serious risk of flight under 18 U.S.C. § 3142(f)(2). *See, e.g.*, *Pavon-Andino*, 2025 WL 446143, at *4 ("When considering the totality of all these circumstances, the large majority of the factors favor release and only a couple of

factors weigh slightly in favor of detention. As a result, the government failed to meet its burden in demonstrating that the defendant poses a serious risk of flight at this stage in the proceedings by a preponderance of the evidence. As a result, the Court believes that a release on conditions is appropriate."); *Mejias-Mejias*, 2025 WL 846435, at *5 ("In the end, the common hallmarks of serious flight risks do not appear in this case. . . . That the defendant poses some risk of flight is not enough. Nor is the potential—or, in government counsel's words at the hearing, an almost certainty—that the defendant would enter ICE custody if released by the Court. The Court must apply the Bail Reform Act, as written, to the circumstances before it. In this case, which raises the threshold issue of whether a detention hearing can occur at all, the Court has done so to the best of its ability with the information before it. In doing so, it concludes that the government may not seek detention in this case. For those reasons, the Court entered a pretrial order of release subject to conditions announced in open court and identified in that order."); *Romero-Martinez*, 2024 WL 965150, at *6 ("All in all, I am not convinced by a preponderance of the evidence that [the defendant] is a serious risk of flight. Other courts in similar circumstances have declined to detain defendants facing federal unlawful reentry charges." (first citing *Muñoz-Correa*, 2023 WL 5672203, at *3; then citing *Figueroa-Alvarez*, 681 F. Supp. 3d at 1148; and then citing *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 968-69 (E.D. Wisc. 2008))); *Romero-Martinez*, 2024 WL 965150, at *4-7 ("I have carefully considered the record and conclude that the government has not proved by a preponderance of the evidence that [the defendant charged with illegal reentry] is a serious risk of flight."); *cf. Muñoz-Correa*, 2023 WL 5672203, at *3 (finding that an undocumented non-citizen defendant was not a serious risk of flight despite pendency of a federal unlawful reentry charge as well as a state assault charge).

///

PAGE 27 – OPINION AND ORDER

**CONCLUSION**

For the reasons stated, the Court finds that the Government has not met its burden of demonstrating by preponderant evidence that Molina-Orantes is a serious risk of flight under 18 U.S.C. § 3142(f)(2), and therefore the Court GRANTS Molina-Orantes' motion for release (ECF No. 10), and releases Molina-Orantes on the conditions discussed in open court. At the Government's request, the Court STAYS its release order until 5 p.m. on April 24, 2025, to allow for district judge review.

**IT IS SO ORDERED.**

DATED this 23rd day of April, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge